Otis MAHONEY, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.

No. 06–AA–1368.

District of Columbia Court of Appeals.

Argued Jan. 9, 2008.

Decided July 24, 2008.

Corey W. Roush, Washington, with whom Jonathan M. Grossman and Julie Ann Perschbacher were on the brief, for petitioner.

William J. Earl, Senior Assistant Attorney General, with whom Linda Singer, Attorney General for the District of Colum-

bia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General at the time the brief was filed, were on the brief, for respondent.

Before KRAMER, BLACKBURNE–RIGSBY and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

Petitioner Otis Mahoney challenges an order of the Compensation Review Board (the "CRB") upholding the denial of his claim for reinstatement of wage-loss and medical benefits.[1] Contending that his benefits were improperly terminated, Mahoney argues that his employer, the District of Columbia, had the burden of justifying the termination and that the CRB erred in ruling that it was petitioner who bore the burden of proof. We affirm the CRB's ruling that Mahoney had the burden of proving that he had a recurrence of symptoms of a work-related injury that entitled him to a reinstatement of benefits. However, because the Department of Employment Services ("DOES") administrative law judge ("ALJ") who conducted the administrative evidentiary hearing on Mahoney's claim repeatedly advised Mahoney that the District had the burden of proof, and because it is possible that this erroneous advice prejudiced Mahoney, we reverse the CRB's decision upholding the denial of Mahoney's claim and remand for further proceedings.[2]

## I.

Petitioner Mahoney worked for a number of years as a maintenance laborer for the District of Columbia Housing Authority ("DCHA"). On March 31, 1999, he accidentally slipped into a meter hole while raking leaves at the Lincoln Heights Housing Development, spraining and tearing ligaments in his right ankle. He filed a claim for disability benefits and was paid Temporary Total Disability ("TTD") benefits beginning in April, 1999. On June 16, 1999, Dr. John Cohen evaluated Mahoney as "recovered" and released him to return to full duty. Mahoney returned to work, and his disability payments (but not his medical expense benefits) were terminated. Thereafter, he experienced pain in his right ankle and was treated at Kaiser Permanente by Drs. Joseph Avery and Lawrence Manning, who periodically restricted his work. On July 12, 2000, Mahoney was examined by Dr. Herbert Joseph for an independent medical evaluation ("IME"). Dr. Joseph found that Mahoney had a limited range of motion in his ankle, could not work in a situation involving more than a few hours standing, and was a candidate for a sit-down occupation, but also found that "the degenerative changes seen on MRI antedated his [workplace] accident." Dr. Joseph opined that the painful motion of Mahoney's ankle was the result of a degenerative ankle condition following a 1986 ankle fracture, "a longstanding problem and not causally related to the industrial accident of March 31, 1999. Therefore, I do not feel that the above-described need for treatment is on a compensable

1. Mahoney claimed benefits under Subchapter XXIII of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, as amended (the "CMPA"), D.C.Code § 1–623.01 et seq.

2. In light of our disposition of the case, we do not reach Mahoney's contentions that the CRB erred in upholding the ALJ's Compensa-

tion Order in light of what Mahoney contends was the ALJ's failure to give the requisite weight to the opinions of Mahoney's treating physicians and to give preference to those opinions over what Mahoney argues was the less "current and fresh" opinion of the independent medical evaluator who reviewed his case.

basis."[3] Mahoney's benefits were terminated on the basis of Dr. Joseph's report.

In September 2000, December 2000, and April 2001, Mahoney filed successive applications for a formal hearing on the termination of benefits. His first two applications were dismissed for procedural defaults (failure to appear at the hearing scheduled on the first application and failure to file a pre-hearing statement in connection with the second application), and Mahoney withdrew the third application without prejudice.

By October 2001, Mahoney had used all of his sick and annual leave and ceased working because DCHA had no light-duty work for him. On December 14, 2001, he filed a claim for reopening of his disability benefits. He informed claims examiner Zee Cabbagestock, an employee of the vendor that acted as Third Party Administrator ("TPA") for the disability program, that he had experienced a flare-up of his work-related injury.[4] Cabbagestock advised Mahoney that, because of the recent transition between the previous TPA and Cabbagestock's employer, she did not have his file or information about his claim. She sought information from Mahoney about his injury and his ability to work. Mahoney told Cabbagestock that he had injured his ankle in 1999, and that he had been released to light-duty work, but that DCHA no longer had light-duty work for him. Mahoney was "a very poor historian," however, and did not tell Cabbagestock that his benefits had previously been terminated.

Cabbagestock testified that, giving Mahoney the "benefit of the doubt," she approved a reinstatement of temporary disability benefits. But in April 2002, Cabbagestock received documentation showing that Mahoney's benefits had previously been terminated. She "was directed by [her] supervisor to forward a termination letter based on the prior termination that benefits should not have been paid in the first place." The notice that was sent, dated April 8, 2002, advised Mahoney that, effective May 14, 2002, "no further compensation or medical benefits are payable pursuant to the Independent Medical Evaluation performed by Dr. Jospeph [sic]."[5] A final notice of termination was dated July 17, 2002.

Mahoney thereafter sought a hearing, which was held before ALJ Robert Middleton on January 3 and 24, 2003. On October 29, 2004, ALJ Middleton issued a Recommended Compensation Decision concluding that, in March 1999, Mahoney had suffered "a temporary aggravation ... of a pre-existing condition which has long since resolved." ALJ Middleton found no evidence that Mahoney "suffered either a new employment related injury or a recurrence of the earlier 1999 employment-related injury." In his recommended decision, ALJ Middleton acknowledged that, ordinarily, "once the TPA has accepted a claim, and determined [that TTD] benefits

---

**3.** Dr. Elliot Sterenfeld, who saw Mahoney on March 31, 1999, had also noted that x-rays revealed "degenerative joint disease secondary to probable old injury."

**4.** Mahoney's then-counsel stated in a June 11, 2002 letter that Mahoney had "stepped in a hole at work" on September 11, 2001, and aggravated his previous injury. However, the record contains no documentation of this asserted workplace incident, and Mahoney's supervisor at DCHA, Almelia Marshall, testified that Mahoney did not report to her any 2001 workplace injury.

**5.** When Cabbagestock called Mahoney to give him this same news, Mahoney "said that he didn't recall receiving a notice that his benefits had terminated."

should be paid, the burden of production to support the change of circumstance or change of conditions rest with the employer," the "employer must adduce persuasive medical evidence sufficient to substantiate a modification or termination of an award of benefits," and "the evidence relied upon to support a modification or termination of compensation benefits must be current and fresh in addition to being probative and persuasive of a change in medical status." ALJ Middleton found, however, that there were "distinctions about this case which demand a different application of the above-mentioned evidentiary protocols." The distinction that ALJ Middleton went on to identify was that the TPA "was unable to conduct a standard investigation of the claim since it did not have claimant's medical evidence without subjecting claimant to what may have been a disastrous delay." [6] As the TPA did not have Mahoney's file at the time of approving his claim for reinstatement of benefits, ALJ Middleton found, acceptance of his claim was merely "provisional[ ]." ALJ Middleton found that "[o]nce Dr. Cohen's evaluation was located, and the IME's report was determined to be reliable, the second TPA took the correct step in terminating claimant's compensation benefits." He concluded that at that time, "the burden of production of evidence shifted to [Mahoney], who has presented nothing in the way of

reliable, probative and substantial evidence of continuing employment related impairment."

The Assistant Director of DOES adopted ALJ Middleton's ruling as a Final Compensation Order, but the CRB reversed and remanded, finding that ALJ Middleton had erred in not mentioning the opinions from Mahoney's treating physicians that were in the record (opinions that were written more recently than Dr. Joseph's opinion) that Mahoney's disability is related to his March 1999 injury,[7] in not evaluating Dr. Joseph's report under the " 'current and fresh' standard," and in failing to explain why "the treating physician preference was not applied." The CRB stated that it agreed that the District had the initial burden to "present[ ] persuasive medical evidence to terminate Mahoney's benefits," after which the "burden then shifted back to Petitioner to provide proof of an employment related impairment following the termination of benefits."

On remand the matter was assigned to ALJ Terri Thompson Mallett. ALJ Mallett did not conduct a new evidentiary hearing, but, in her Compensation Order on Remand dated May 23, 2006, "adopt[ed] and fully incorporate[d] by reference the findings of fact recited" by ALJ Middleton in his October 29, 2004 Compensation Order. ALJ Mallett agreed with ALJ Middleton that under the circumstances pre-

6. ALJ Middleton reasoned that, ordinarily, placing "the burden of production to support the change of circumstance or change of conditions" on the employer makes sense because there is "an underlying assumption that the determination to accept the claim has involved fairly standard and uniform investigatory procedures in support of payment of TTD benefits." In this case, however, "upon receiving claimant's request for benefits, [the TPA] was unable to conduct a standard investigation of the claim since it did not have claimant's medical evidence from the prior 1999 employment injury...."

7. The record contained a December 11, 2002 opinion of treating physician Dr. Manning that "Mr. Mahoney's present ankle pain is related to the 3/31/99 injury" and a January 2, 2003 opinion of S. Roger Parthasarathy, a physician who treated Mahoney in the immediate aftermath of his March 31, 1999 injury, that "Mr. Mahoney's inability to perform his regular work activities and need for medical disability subsequent to 3/31/99 is causally related to his 3/31/99 work injury due to an acute exacerbation of his chronic, degenerative ankle arthritis."

sented, it was appropriate to treat the July 17, 2002 final decision to cease paying benefits as the "initial decision" on Mahoney's claim (rather than as a modification of benefits), and to recognize that the "the initial burden of production to prove a recurrence of the symptomatology of Claimant's 1999 injury is on Claimant." ALJ Mallett stated that Mahoney had the burden to show "both the symptoms and a causal relationship between [his] current symptoms and the March 31, 1999 injury." She concluded that Mahoney had presented "insufficient evidence of a recurrence of the symptomatology of Claimant's 1999 injury." In explaining why she rejected the opinions of Mahoney's treating physicians that Mahoney's ankle symptoms were causally related to his March 1999 workplace injury, ALJ Mallett characterized Dr. Manning's medical notes as "vague and incomplete." She also rejected the opinion of Dr. Parthasarathy because it was not clear that Dr. Parthasarathy had considered all of Mahoney's medical records and because his opinion was inconsistent with the "unsolicited June 1999 medical reports of Dr. Cohen." Among the records to which Drs. Manning and Parthasarathy did not refer was an October 13, 2000 Kaiser Permanente physical therapy record stating that Mahoney had reported that he "slipped on some boards and injured [his] ankle again," a report that ALJ Mallett treated as "clear evidence that Claimant sustained an intervening injury in 2000."

In an October 20, 2006 decision, the CRB affirmed the Compensation Order on Remand. The CRB agreed that because Mahoney's "claim for recurrence was never formally accepted," but was only "provisionally accepted," Mahoney "had the burden to prove the recurrence." The CRB

was satisfied that there was substantial evidence to support ALJ Mallett's conclusion that "an intervening non-work related right ankle injury occurred in 2000" and that "the current condition of Petitioner's ankle is not causally related to his March 31, 1999 work injury." The CRB also concluded that ALJ Mallett had adequately explained her reason for not accepting the opinions of treating physicians Manning and Parthasarathy. This appeal followed.

### II.

 "This court 'will not disturb an agency decision if it rationally flows from the factual findings on which it is based and if those findings are supported by substantial evidence.'" *McCamey v. District of Columbia Dep't of Employment Servs.*, 947 A.2d 1191, 1195–96 (D.C.2008) (en banc). "Therefore, this court will affirm the agency's ruling unless it is arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with the law." *Id.* at 1196. Substantial evidence is relevant evidence such as a "reasonable mind might accept as adequate to support a conclusion." *Giles v. District of Columbia Dep't of Employment Servs.*, 758 A.2d 522, 524 (D.C.2000) (citation omitted).

### III.

 Citing *Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Empl. Servs.*, 703 A.2d 1225 (D.C. 1997), Mahoney contends that because he "had already been *granted* benefits," the District, "as the party challenging that initial award[,] had the burden of proving that those benefits should be revoked" (underscoring in the original).[8] He contends that "[b]y placing the burden instead on

---

8. *See id.* at 1231 ("Generally, the burden is on the party asserting that a change of circum-

stances warrants modification to prove the change").

Mr. Mahoney, Judge Mallett plainly erred." We reject Mahoney's argument about where the burden of proof properly lay. Substantial evidence supports the CRB's conclusion that Mahoney's "claim for recurrence" was not "formally accepted" when Claims Examiner Cabbagestock took steps to reinstate payment of benefits to him. The District presented uncontradicted evidence that when Cabbagestock took that action, she and her employer, the District's new TPA, did not have access to Mahoney's file and records, and that what Cabbagestock did was to give Mahoney the benefit of the doubt until his records became available. Moreover, Mahoney acknowledged during his testimony that he did not tell Cabbagestock that his benefits had previously been cut off, and the multiple requests for a formal hearing that he filed in the wake of the termination of his benefits in 2000 belie his claim that he "didn't recall receiving a notice that his benefits had terminated."[9] There was a substantial factual foundation for treating the July 17, 2002 termination of Mahoney's reinstated benefits as an initial decision on a new claim—which Mahoney had the burden of proof to overturn—rather than as a termination or modification of formally-approved benefits. And, ALJ Mallett's determination—i.e., that the TPA's decision in 2002 to cease payment of benefits to Mahoney should be treated as the initial decision on Mahoney's claim, rather than as a termination or modification of benefits—was neither arbitrary nor capricious. As ALJ Mallett reasoned,

In light of the beneficent and humanitarian purposes of the Act,[10] the TPA, after initial inquiry, but without adequate documentation upon which a final decision could be made, began TTD payments. The July 17, 2002 decision of the TPA to cease payment of benefits was the point in time at which the investigation into Claimant's claim was complete and there was adequate information upon which a determination could be made. To determine otherwise [i.e., as ALJ Middleton put it, to "h[o]ld against" the TPA its decision to reinstate benefits without delay even though it did not have supporting administrative files] would have been to deny Claimant any benefit without adequate information until it was received. This cannot be in accord with the purposes of the Act."

Compensation Order on Remand at 5.

Mahoney argues, however, that there was no statutory authority for a mere "provisional" acceptance of his claim, and that the CMPA—specifically, D.C.Code § 1–623.24(a) (2001), which was applicable at the time Mahoney's reinstated benefits were terminated—authorizes only "an award for or against payment of compensation." In fact, section 1–623.24(a) requires the Mayor or his designee to make "an award for or against payment of compensation" after "completing such investigation as the Mayor or his or her designee considers necessary." Id., § 1–623.24(a)(2) (2001). Here, as Claims Examiner Cabbagestock explained and the ALJs found, the new TPA had not completed any such investigation, but approved payments to

---

9. We take Mahoney's point, that he was not informed that the benefits he was awarded after his December 14, 2001 claim were only provisional, but he points to no prejudice from this omission. ALJ Middleton concluded that Mahoney was not "liable for repayment of wage replacement earnings [which amounted to $12,466.47]," ALJ Mallett did not conclude otherwise, and the record contains no indication that the District seeks to recover any of the provisional payments that were made.

10. This court has recognized the humanitarian purpose of the CMPA. See McCamey, 947 A.2d at 1202.

Mahoney in light of the temporary unavailability of administrative records, in order to give Mahoney the benefit of the doubt in light of the humanitarian purposes of the disability compensation program. Thus, the "provisional" acceptance of Mahoney's claim did not conflict with section 1–623.24(a). Nor was Mahoney's claim "deemed accepted" because the TPA did not make what the CRB accepted as its "initial decision" on Mahoney's claim for reinstatement of benefits until more than 30 days after he filed his claim. The provision of current law requiring an "award for or against payment of compensation ... within 30 days after the claim was filed," D.C.Code § 1–623.24(a) (2007 Supp.), was not added to the statute until February 18, 2005, see 52 D.C.Reg. 1449, long after the TPA's action in issue here.[11] D.C.Code § 1–623.24(a–3)(1) (2007 Supp.),[12] which Mahoney argues the TPA should have followed if it could not make a prompt decision on Mahoney's claim without the missing records, also was not in effect during the 2002 time period in issue.

Mahoney does not dispute that a claimant has the burden of proof in a hearing at which an initial decision denying a claim for benefits under the CMPA is in issue. Cf. McCamey, 947 A.2d at 1199 (where no

presumption of compensability applies, the burden falls on the claimant to prove by a preponderance of the evidence that a workplace incident caused his disabling injury); Kralick v. District of Columbia Dep't of Employment Servs., 842 A.2d 705, 712 (D.C.2004) (noting that "the CMPA does not contain a ... presumption of compensability"). Accordingly, because ALJ Mallett reasonably treated the July 17, 2002 Termination Notice as the "initial decision" on Mahoney's December 14, 2001 claim, the CRB and ALJ Mallett did not err in holding that Mahoney had "the initial burden of production to prove a recurrence of the symptomatology of Claimant's 1999 injury" and "the burden to prove the recurrence."

 Nevertheless, we conclude that we must remand this matter for a new hearing. That is because, even though the CRB and ALJ Mallett correctly articulated the burden of proof (and even though ALJ Middleton also correctly articulated the burden of proof in his proposed Compensation Order), ALJ Middleton misstated or ambiguously stated the applicable burden of proof during the evidentiary hearing on Mahoney's claim. As Mahoney notes in his briefs, during the hearing,

11. Moreover, even if it were applicable to Mahoney's claim, the current statute *does* appear to provide for provisional acceptance of a claim for benefits. D.C.Code § 1–623.24(a–3)(1) (2007 Supp.) provides that "[i]f the Mayor or his or her designee fails to make a finding of facts and an award for or against payment of compensation within 30 calendar days, the claim shall be deemed accepted, and the Mayor or his or her designee shall commence payment of compensation on the 31st day following the date the claim was filed." That provision is followed by D.C.Code § 1–623.24(a–3)(2) (2007 Supp.), which provides that "[i]f after the commencement of payment, the Mayor makes a determination against payment of compensation, payment shall cease...." The cessation of payments pursuant to section 1–623.24(a–3)(2) appears

to be distinct from a modification of benefits, as to which the applicable procedural requirements are described in D.C.Code § 1–623.24(d) (2007 Supp.).

12. Section 1–623.24(a–3)(1) provides in relevant part that the requirement to commence payment of compensation on the 31st day following the date on which a claim was filed "shall not apply if the Mayor provides notice in writing that extenuating circumstances preclude the Mayor from making a decision within this period, which shall include supporting documentation stating the reasons why a finding of facts and an award for or against compensation cannot be made within this period."

ALJ Middleton advised Mahoney's counsel—repeatedly—that the burden to demonstrate that Mahoney was not entitled to a continuation of benefits fell on the District as employer. *See* 1/3/03 Tr. at 20 ("Ordinarily, when there has been a denial of claimant's benefits, the burden rests with the government to show that there has been a change in medical condition and that the manner of denying benefits is consistent with that change in condition."); *id.* at 23 ("assuming everything is as you say, Mr. Grossman [counsel for petitioner Mahoney], the Employer has the burden of proof."); and 1/24/03 Tr. at 6–7 ("Once a claim has been accepted and benefits have been awarded, the government bears the burden of proof that there has been a change in medical condition...."). In response to Mahoney's counsel's statement that he assumed he needed to call Mr. Mahoney "to make my affirmative case," *id.* at 4, ALJ Middleton said, "in essence, it's [claimant's] choice whether to call claimant or not. The burden, at this point, is employer's. Okay?"; *see also id.* at 24 (statement by petitioner's counsel to ALJ Middleton that "you have decided that the burden is Mr. Buchholz's [counsel for the District]"). And, after the District completed presentation of its witnesses (Claims Examiner Cabbagestock and Mahoney's former DCHA supervisor Almelia Marshall), Judge Middleton asked Mahoney's counsel "what's your pleasure?" (regarding whether to call Mr. Mahoney or any other witness) and instructed her to "be very, very succinct," *id.* at 67–implying, it seems to us, that Mahoney had no burden to put on any evidence.

ALJ Middleton's statements show that, in his capacity as hearing officer, he was ostensibly following the rule that "where the moving party fails to offer any evidence warranting a modification of the award, the non-moving party should prevail under this statute even if he produces no evidence at all." *Washington Metro. Area Transit Auth.,* 703 A.2d at 1231. But, as we have described, ALJ Mallett and the CRB applied a different burden of proof and production. *See* Compensation Order on Remand at 5 ("the initial burden of production to prove a recurrence of the symptomatology of Claimant's 1999 injury is on Claimant"); CRB Decision at 3 (Mahoney "had the burden to prove the recurrence").

We are left with the possibility that, misdirected by the hearing officer, Mahoney may have provided less testimony or other evidence than was available to satisfy his burden of proof that the symptoms he had in 2002 were a recurrence of the symptomatology of his March 1999 workplace injury (rather than the result of his degenerative ankle condition or a different, non-workplace injury). As an example of testimony that Mahoney might have offered but did not provide, we cite Mahoney's argument that at the evidentiary hearing, there were "no questions ... and no development anywhere in the record" about the physical therapy note suggesting that he suffered an off-the-job injury in 2000, a note that factored heavily in ALJ Mallett's finding that Mahoney's current symptoms were not related to his 1999 workplace injury. As Mahoney notes, counsel for District made no reference to that physical therapy note during the evidentiary hearing, affording Mahoney no signal that he must explain the physical therapy note in order to meet the burden that ALJ Mallett described in her Compensation Order on Remand. Apprised of the burden of proof that the ALJ would apply, Mahoney might also have sought more detailed and less "vague" statements from Drs. Manning and Parthasarathy. As it was, Mahoney advises the court, he presented updated and clarifying affidavits from these two treating physicians only

when seeking reconsideration of ALJ Mallett's Compensation Order on Remand, and these affidavits were not accepted by the ALJ.

We agree with Mahoney that he is "entitled, at the very least, to a hearing regarding whether the ... October 2000 injury occurred," and a hearing at which he is correctly apprised of the burdens of production and proof that will apply. Accordingly, we reverse the decision of the CRB affirming the denial of Mahoney's December 2001 claim, and remand for further proceedings not inconsistent with this opinion.

*So ordered.*